IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION


MARY PINKNEY                                                                              PLAINTIFF


vs.                                                          CIVIL ACTION NO. 3:10-CV-00040-SAA

MICHAEL J. ASTRUE,
COMMISSIONER OF SSA                                                                       DEFENDANT



# MEMORANDUM OPINION

This case involves an application under 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of Social Security denying the application of plaintiff Mary Pinkney for period of disability (POD), disability insurance benefits (DIB) under Sections 216(I) and 223 of the Social Security Act and for supplemental security income (SSI) payments under Section 1614(a)(3) of the Act. Plaintiff filed applications for POD and DIB and protectively filed for SSI on November 8, 2006, alleging disability beginning on April 3, 2006.[1] Docket 5, Exhibit 3, p. 14.[2] Plaintiff's claim was denied initially (Ex. 4, p. 41-42) and on reconsideration. Ex. 4, p. 43-44. She filed a request for hearing (Ex. 5, p. 59) and was represented by an attorney

---

[1]The ALJ's decision (Docket 5, Ex. 3, p. 14-23) and Plaintiff's Brief in Support of Judicial Review (Docket 8, p. 1-17) state the application date as November 8, 2006 and the alleged date of disability as April 3, 2006. Some disability determination documents likewise state the filing date as November 8, 2006. Docket 5, Ex. 4, p. 41-44. However, one disability determination document contains a filing date of April 29, 2004 (Ex. 4, p. 45) and the application for DIB included in the record, alleging a disability date of July 22, 2003, has a filing date of April 29, 2004. Docket 5, Ex. 6, p. 120-123.

[2]The Administrative Record in this case is attached to the defendant's Answer at Docket Entry 5. All citations to the Administrative Record are to the Exhibit and Page Number at Docket Entry 5.

at the administrative hearing on February 3, 2009. Ex. 3, p. 24-40. The Administrative Law Judge (ALJ) issued an unfavorable decision on April 11, 2009. Ex. 3, p. 11-23. Following the ALJ's decision, the plaintiff obtained new counsel and submitted additional evidence to the Appeals Council, including a Notice of Award for disability benefits beginning October 2009[3] (Ex. 8, 218-222) and additional medical records.[4] Ex. 8, p. 328-357; Ex. 9, p. 358-430. The Appeals Council denied plaintiff's request for a review of the unfavorable decision (Ex. 3, p. 1-7), and the plaintiff timely appealed to this court. Because both parties have consented to have a magistrate judge conduct all the proceedings in this case under 28 U.S.C. § 636(c), the undersigned has the authority to issue this opinion and the accompanying final judgment.

## I. FACTS

Plaintiff was born on May 11, 1964 and was 41 years old at the alleged onset of her disability. Ex. 3, p. 29, 121. She completed the twelfth grade and previously worked as a home health aide, certified nursing assistant and sewing machine operator. Ex. 3, p. 30, 37-38, Ex. 7, p. 144-154. Plaintiff initially claimed disability due to a back injury, high blood pressure, heart problems and depression. Ex. 7, p. 130.

The ALJ determined that plaintiff suffered from "severe" impairments, including obesity, disorders of the back, hypertension, congestive heart failure, and affective mood disorder (Ex. 3, p. 16), but that the record evidence did not contain any diagnostic findings, signs, symptoms or

---

[3]During the pendency of her first application, the plaintiff had filed a second application for disability benefits on June 17, 2009, alleging benefits beginning April 16, 2009.

[4]The additional medical evidence included updated medical records from Dr. Poe and LifeHelp, Medical Source Statements from Dr. Poe and Liz Rhea, medical records from Greenwood Leflore Hospital, Dr. Seibel, MS Baptist and a consultative examination report from Dr. Whelan. Ex. 8, p. 328-357, Ex. 9, p. 358-430.

laboratory results to support a finding that any of the impairments met or equaled a Listing in 20 C.F.R. Part 404, Subpart P, App. 1 (20 C.F.R. 404.1525, 404.1526, 416.925 and 416.926). Ex. 3, p. 17-18. He found that the plaintiff's back disorder did not meet the criteria of Listing 1.04 because the record evidence did not demonstrate evidence of root compression, spinal arachnoiditis or lumbar spinal stenosis as required. *Id.* He further held that the plaintiff's heart disorders did not meet the severity required under Listings 4.02, 4.04, 4.05, 4.06, 4.09, 4.10, 4.11 or 4.12. In evaluating the plaintiff's obesity, the ALJ noted her height and weight – 5' 4" tall and 202 pounds – and considered the impact of obesity on her functioning. Ex. 3, p. 18-19. The ALJ found that the plaintiff's mood disorder did not meet the "paragraph B" criteria of 20 C.F.R. Part 404, Subpart P, App. 1 because plaintiff experienced only mild restrictions of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace and no episodes of decompensation. Ex. 3, p. 19.

Considering plaintiff's "severe" impairments, the ALJ concluded that the plaintiff retains the Residual Functional Capacity (RFC) to "lift/carry and push/pull ten pounds occasionally and frequently, stand/walk for two hours in an eight-hour workday, and sit for six hours in an eight-hour workday. She can occasionally climb, balance, stoop, crouch and crawl. She must avoid unprotected heights and hazardous moving machinery. Secondary to chronic pain, affective mood disorder, and potential side effects of medications, she is limited to jobs that do not demand attention to details or complicated jobs tasks or instructions." Ex. 3, p. 19-20. The ALJ stated that he relied on the substantial medical evidence in formulating plaintiff's RFC and accorded "some weight" to the treatment notes of plaintiff's treating physicians, including the treatment records of Dr. Gutti, but gave "no weight" to Dr. Gutti's medical source statement

3

because it was "based on the [plaintiff's] subjective complaints, rather than [the doctor's] objective findings." *Id*.at p. 21. The ALJ further found the "lack of objective findings or medial records to support the [plaintiff's] subjective complaints" particularly troublesome. *Id.*

Based on testimony of a vocational expert [VE], the ALJ held that plaintiff's "severe" impairments prevent her from performing her past relevant work. Ex. 3, p. 20. The VE testified that with the limitations set out by the ALJ in his hypothetical, the plaintiff would be able to perform unskilled jobs performed at the sedentary level of exertion such as a laminator and a final assembler. Ex. 3, p. 38-39. Considering plaintiff's age, education, work experience and RFC, the ALJ concluded that the plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy, and she therefore was "not disabled" under the Act. Ex. 3, p. 22-23.

Following the ALJ's decision, plaintiff submitted additional evidence to the Appeals Council, including updated medical records from Dr. Poe and LifeHelp and Medical Source Statements from Dr. Poe and Liz Rhea, a Licensed Professional Counselor at LifeHelp. Ex. 8, p. 328-357, Ex. 9, p. 358-430. The Appeals Council denied plaintiff's request for review because the new information did not "warrant a change in the Administrative Law Judge's decision." Ex. 3, p. 2.

The plaintiff claims that the Appeals Council erred when it failed to properly consider this new and material evidence and when it did not comply with Social Security Administration internal procedure HALLEX I-5-3-17(B), which requires it to consider a subsequent award of benefits. The plaintiff further claims that ALJ's RFC determination was not supported by any medical source's opinion and was contrary to the opinions of the treating sources, making his

4

reliance on the VE's testimony, which was based on the erroneous RFC, also erroneous.

## II. DISCUSSION

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[5] The burden rests upon plaintiff throughout the first four steps of this five-step process to prove disability, and if plaintiff is successful in sustaining her burden at each of the first four levels, then the burden shifts to the Commissioner at step five.[6] First, plaintiff must prove she is not currently engaged in substantial gainful activity.[7] Second, plaintiff must prove her impairment is "severe" in that it "significantly limits [her] physical or mental ability to do basic work activities . . . ."[8] At step three the ALJ must conclude plaintiff is disabled if she proves that her impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2003).[9] If plaintiff does not meet this burden, at step four she must prove that she is incapable of meeting the physical and mental demands of her past relevant work.[10] At step five, the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and

---

[5] *See* 20 C.F.R. §§ 404.1520, 416.920 (2003).

[6] *Muse v. Sullivan,* 925 F.2d 785, 789 (5th Cir. 1991).

[7] 20 C.F.R. § 416.920(b) (2003).

[8] 20 C.F.R. § 416.920 (2003).

[9] 20 C.F.R. § 416.920 (2003). If a claimant's impairment meets certain criteria, that claimant's impairments are "severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 416.925 (2003).

[10] 20 C.F.R. § 416.920(e) (2003).

past work experience, that she is capable of performing other work.[11] If the Commissioner proves other work exists which plaintiff can perform, plaintiff is given the chance to prove that she cannot, in fact, perform that work.[12]

This court is limited on appeal to determining whether the Commissioner's final decision is supported by substantial evidence and whether the Commissioner used the correct legal standard. *Qualls v. Astrue*, 339 Fed. Appx. 461 (5th Cir. 2009), citing *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir.1999). The court has the responsibility to scrutinize the entire record to determine whether the ALJ's decision was supported by substantial evidence and whether the proper legal standards were applied in reviewing the claim. *Ransom v. Heckler*, 715 F.2d 989, 992 (5th Cir. 1983). The court has limited powers of review and may not re-weigh the evidence or substitute its judgment for that of the Commissioner,[13] even if it finds that the evidence leans against the Commissioner's decision.[14] In the Fifth Circuit substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999) (citation omitted). Conflicts in the evidence are for the Commissioner to decide, and if there is substantial evidence to support the decision, it must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court's inquiry is whether the record, as a whole, provides sufficient evidence that would allow a reasonable mind

---

[11] 20 C.F.R §§ 404.1520(f)(1) (1996) & 416.920(f)(1) (1996).

[12] *Muse*, 925 F.2d at 789.

[13] *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

[14] *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

to accept the conclusions of the ALJ. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994), citing *Richardson v. Perales,* 402 U.S. 389, 390, 28 L.Ed.2d 842 (1971).

When new evidence becomes available after the ALJ's decision, and there is a reasonable likelihood that the new evidence could change the outcome of the decision, a remand is appropriate so that this new evidence can be considered. *Govea v. Astrue*, 2008 WL 2952343, *4 (W.D. Tex. 2008). "New evidence" must meet three criteria: (1) it must be new, and not merely cumulative of what is already in the record; (2) it must be material, *i.e.,* relevant, probative, and likely to change the outcome of the case; and (3) the claimant must demonstrate good cause for not having incorporated the new evidence into the administrative record. *Pierre v. Sullivan*, 884 F.2d 799, 803 (5th Cir. 1989). The Fifth Circuit has held:

> The requirement of materiality is an important one. The concept 'material' suggests that the new evidence must be relevant and probative. However, not every discovery of new evidence, even if relevant and probative, will justify a remand to the Secretary, for some evidence is of limited value and insufficient to justify the administrative costs and delay of a new hearing.

*Chaney v. Schweiker*, 659 F.2d 676, 679 (5th Cir. 1981). "A report that offers no new facts does not constitute new evidence." *Evangelista v. Secretary of Health and Human Services*, 826 F.2d 136, 140 (1st Cir. 1987).

The plaintiff argues that even though the medical evidence presented to the Appeals Council after the ALJ's unfavorable decision was new and material, the Appeals Council did not properly consider it as required by its own rules. Docket 8, p. 7-14. Contrary to the Commissioner's argument, this court must consider that evidence as part of the entire record,

7

even though the Appeals Council denied review. *Rodriguez v. Barnhart*, 252 F.Supp.2d 329, 335 (S.D. Tex. 2003).

The additional medical evidence submitted to the Council included records from Dr. Poe dated September 25, 2007 to April 24, 2009 (Ex. 9, p. 358-395) and a medical source statement dated August 11, 2009. Ex. 9, p.420-425. At the time of the ALJ's decision, the record contained only seven pages of records from Dr. Poe – from July 28, 2003 to November 1, 2006 – and no medical source statement from Dr. Poe. Ex. 8, p. 243-249.

The Council is charged with the responsibility to review the evidence provided after the decision of the ALJ and assess whether the ALJ's decision remains supported by substantial evidence. *Higginbotham v. Barnett*, 405 F.3d 332, 337-38 (5th Cir 2005). The Medical Source Statement from Dr. Poe submitted to the Appeals Council is more restrictive of the plaintiff's abilities, with Dr. Poe concluding that the plaintiff could sit, stand and walk for less than 2 hours in an 8-hour workday. She would need a job that permitted her to shift positions at will from sitting, standing or walking and elevate her legs for greater than 50% of the workday. She could frequently lift and carry 10 pounds, occasionally twist and climb stairs and rarely stoop, crouch and climb ladders. She would experience "good days" and "bad days," would miss more than 4 days of work per month and would not be capable of even low stress jobs. Ex. 9, p. 420-425.

Likewise, the May 8, 2009 medical source statement from Liz Rhea, a Licensed Professional Counselor (LPC) at LifeHelp reports mental restrictions greater than those found by the ALJ. The ALJ acknowledged that the plaintiff sought treatment from LifeHelp for depression but found that she improved with medication and therapy. Ex. 3, p. 17. Ms. Rhea, on the other hand, reported that the plaintiff was being treated for Major Depressive Disorder

8

and found that she had marked restrictions of activities of daily living, marked difficulties in maintaining social functioning, marked deficiencies of concentration, persistence or pace and four or more episodes of decompensation. Ex. 9, p. 414-419. She reported that the plaintiff had been suffering from this chronic affective disorder for at least two years and opined that, due to her severe depression, she "is not capable of handling any type of work stress, can't focus or concentrate, does not function well socially, is irritated and frustrated most of the time, has suicidal thoughts, is tearful and withdraws and isolates." *Id.*

The undersigned finds that the additional medical source statements, containing new evidence that directly contradicted the findings of the ALJ, were material. They created a reasonable possibility that the new evidence would change the outcome of the ALJ's decision and should have prompted the Appeals Council to remand the matter for consideration of the additional evidence, particularly considering that the ALJ declined to fully credit Dr. Gutti's medical source statement, the only medical source statement contained in the record.

Dr. Gutti performed a consultative examination on November 18, 2008. Ex. 8, p. 297-299. The ALJ discounted her opinion because it was "based on the [plaintiff's] subjective complaints, rather than [Dr. Gutti's] objective findings." Ex. 3, p. 21. Dr. Gutti diagnosed the plaintiff with lumbar sacral syndrome with left-sided radiculopathy, depression, hypertension, poor vision, obesity, atypical chest pain and dome heart problems. *Id.* According to Dr. Gutti's report, the plaintiff reported having a recent MRI which revealed "two bulged disks" and "some cysts on her groin" and was receiving ongoing treatment; she claimed to have scheduled an appointment with a neurosurgeon to have a diskogram performed. Ex. 8, p. 297. Dr. Gutti's examination revealed "some left radiculopathy" and she reported the plaintiff's claims of being

9

unable to do any work-related activities. She found that the plaintiff "has depression" but "does not have any mental impairments to affect her ability to reason and make social occupational and personal adjustments." *Id.* She further reported that she did not possess the medical evidence necessary to evaluate the plaintiff's claims of heart problems. *Id.* The Commissioner argues that the medical opinions of record support the ALJ's decision because Dr. Gutti did not conclude that Plaintiff was disabled. Docket 10, p. 15. This argument fails because, in the Fifth Circuit, a conclusory statement by a physician is properly discounted by the ALJ. *Newton v. Afpel*, 209 F.3d 448, 456 (5th Cir. 2000).

The Commissioner further argues that the medical records support the ALJ's decision, citing an April 2006 MRI that yielded normal results. Docket 10, p. 14. However, a lumbar MRI performed on February 9, 2007 revealed broad base disc bulges at L5-S1 and L4-L5 with mild mass effect on the anterior aspect of the thecal sac, small scattered hemangiomas through the lumbar spine and osteoarthritis. Ex. 8, p. 268. Although the ALJ did not have the benefit of the 2007 MRI at the hearing on February 3, 2009,[15] he referred to it in his decision and did not request a consultative examination to be performed with the benefit of the MRI results.

The undersigned finds that the ALJ did not satisfy his affirmative duty to develop the record and to "ensure that his decision is an informed decision based upon sufficient facts." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996). The ALJ afforded "no weight" to Dr. Gutti's medical source statement even though it was the only one contained in the record; he did not

---

[15]At the hearing, the ALJ asked the plaintiff about Dr. Gutti's report of an MRI and neurologist referral – the typist transcribed her name as Dr. Nagoody – and the plaintiff stated that she was "not aware of that." The ALJ responded "[o]kay. Well, then I guess they're not out there." Ex. 3, p. 27-28.

seek clarification from Dr. Gutti on her objective findings or request a second evaluation with the benefit of the plaintiff's medical records; he did not perform a detailed analysis under *Newton*;[16] and he did not request additional medical source statements. An ALJ has a duty to contact a treating physician or other medical sources "[w]hen the evidence . . . receive[d] from [a] treating physician . . . is inadequate . . . to determine whether [a claimant] is disabled." 20 C.F.R. §§ 404.1512(e), 416.912(e). These regulations further provide "additional evidence or clarification *will* be sought" [emphasis added by the court] "when the report from [a] medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1512(2)(1), 416.912(e)(1).

Because this case will be remanded for further proceedings consistent with this opinion, the court need not address the merits of the plaintiff's remaining arguments at this time. However, on remand, the ALJ should additionally consider the plaintiff's subsequent application for disability benefits. The only evidence currently in the record about the plaintiff's subsequent application is a copy of the Notice of Award for disability insurance benefits beginning October 2009, which was submitted by the plaintiff to the Appeals Council on January 8, 2010. Ex.7, p.

---

[16] *Newton* noted the factors that an ALJ must consider before declining to give evidence of a treating physician controlling weight:
  (1)   the physician's length of treatment of the claimant,
  (2)   the physician's frequency of examination,
  (3)   the nature and extent of the relationship
  (4)   the support of the physician's opinion afforded by the medical evidence of record,
  (5)   the consistency of the opinion with the record as a whole, and
  (6)   the specialization of the treating physician.
*See* 20 C.F.R. § 404.1527(d)(2)

219-222. The record does not contain any additional information pertaining to the subsequent claim and does not contain a specific statement that the Appeals Council considered the information in the subsequent disability file.

The Notice of Appeals Council Action in this case stated:

[T]he Appeals Council considered the fact that since the date of the Administrative Law Judge's decision, you were found to be under a disability beginning April 12, 2009, based on the application(s) you filed on June 17, 2009; however, the Council found that this information does not warrant a change in the Administrative Law Judge's decision. The Appeals Council will not disturb the favorable determination. Ex. 3, p. 2.

In every request for review, the Office of Appellate Operations (OAO) is responsible for determining whether subsequent claims involving disability issues have been filed. HALLEX I-5-3-17(III)(A). If a subsequent claim exists, the OAO analyst must obtain the file and prepare a recommendation to the Appeals Council. *Id.*

If the initial (or reconsidered)determination in the subsequent claim is favorable, the AC will consider the evidence in the subsequent claim to determine whether there is new and material evidence relating to the prior claim. The AC will expedite its action on the request for review in this situation.

HALLEX I-5-3-17(I)(B).

The fact that a subsequent application for disability benefits is allowed while a request for review of a prior denial is pending before the Appeals Council may or may not affect the Appeals Council's action on the appeal. Each case requires consideration of the individual facts presented.

HALLEX I-5-3-17(III)(B)(2).

The Disability Determination Service's (DDS) allowance of the subsequent claim does not invade the period previously adjudicated by the ALJ decision; however, it suggests SSA has in its possession new and material evidence that related to the period on or before the date of that decision.

*Id.* The Fifth Circuit has confirmed that "[w]hile HALLEX does not carry the authority of law, . . . where the rights of individuals are affected, an agency must follow its own procedures, even

where the internal procedures are more rigorous than otherwise would be required." *Newton v. Afpel*, 209 F.3d 448, 459 (5th Cir. 2000). There is no indication in this record that the Appeals Council properly considered anything more than the Notice of Award which plaintiff's counsel submitted to it. If that is the case, then the HALLEX requirements were not followed.

## IV. CONCLUSION

After a review of the evidence presented to the ALJ and the "new" information provided by plaintiff, this court finds that the information is material, and there is a reasonable likelihood that the additional medical evidence could change the outcome reached by the ALJ. Further, the ALJ did not satisfy his duty to develop the record, resulting in a decision that was not supported by substantial evidence and must be remanded for further proceedings. A separate judgment in accordance with this Memorandum Opinion will issue this date.

**SO ORDERED**, this, the 13th day of December, 2010.

/s/ S. Allan Alexander
UNITED STATES MAGISTRATE JUDGE